

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 8, 2022

**By ECF**

The Honorable Richard Berman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Hicham Kabbaj*, 20 Cr. 08 (RMB)

Dear Judge Berman:

    The Government respectfully submits this letter in advance of sentencing in the above captioned matters, which is scheduled for February 22, 2022. For the reasons explained below, the Government submits that a sentence within the stipulated United States Sentencing Guidelines (the "Guidelines") range of 51 to 63 months' imprisonment (the "Stipulated Guidelines Range") would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    **A.  Factual Background**

    The defendant lied his way into a senior position within the Information Technology ("IT") department at Rakuten Marketing ("Rakuten"), and he then used his position to embezzle more than $6 million dollars over the next four years to enrich himself and his family.

    In May 2015, Rakuten hired the defendant as the Vice President of Global Operations, a high-level position with a six-figure salary. (PSR ¶ 87). The defendant, however, was dishonest from the very beginning. For example, the defendant listed, among his references, "Nelson Rhimes" who was reportedly the Chief Technology Officer at Authentidate, the defendant's previous employer, to whom the defendant allegedly reported at Authentidate for four and a half years; and the defendant's own sister, whom he listed as a "customer" while he was at Authentidate. The defendant's deceit did not end at hiring.

    Just three short months after the defendant started his new job, he began an elaborate scheme to steal money from his new employer. The defendant created a false identity—Nelson Rhimes, who he had previously listed as a reference—a fictitious company, "Interactive Systems," he set up an email account in Nelson Rhimes's name, and a bank account for Interactive Systems. (PSR ¶¶ 9-11,16). And with that, the defendant began a four-year-long scheme to bill his former employer for fake invoices. Many of the invoices "Interactive Systems" submitted were plainly suspicious—often saying nothing more than "Base fee for September 2105[sic]," "Project Phase 1 completion 2015," "Cloud Infrastructure/54 COMPUTES[sic] – RV000009S." But these invoices got paid because the defendant, a well-liked and eventually trusted employee, vouched

for the company. Over time, the defendant got bolder and bolder, and greedier and greedier, and he went from seeking mere thousands at a time to hundreds of thousands per invoice. And over the course of four years, the defendant successfully bilked his former employer of $6 million, which he used to fund vacations, designer goods, jewelry, vehicles, and houses, including a vacation home in Palm Beach Gardens. (PSR ¶ 24).

### B. Discussion

#### 1. Applicable Law

As the Court is aware, the Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and that range "should be the starting point and the initial benchmark" for the Court's sentencing determination. *Gall v. United States*, 552 U.S. 38, 49 (2007). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *id.* at 46, they are not merely a "body of casual advice." *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

Following the calculation of the applicable Guidelines range, a court then considers the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Gall*, 552 U.S. at 50 & n.6. In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). To the extent a court imposes a sentence outside the range recommended by the Guidelines, that court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 46).

### 2. A Sentence Within the Stipulated Guidelines Range is Warranted

The Government respectfully submits that a sentence within the Stipulated Guidelines Range of 51 to 63 months' imprisonment is sufficient, but not greater than necessary, to comply with the purposes of sentencing. The Section 3353(a) factors most applicable here include the nature and seriousness of the offense, the history and characteristics of the defendant, the need for deterrence, to protect the public, and to promote respect for the law.

The defendant's actions are inexcusable. As described above, the defendant obtained a good-paying job within the American arm of a global corporation, and, based on his upward trajectory at Rakuten before his fraud was uncovered, he could have had a successful and lucrative career there. Indeed, by the time the defendant was fired after his fraud scheme was uncovered, he had been promoted to senior vice president of technology operations and engineering, and was making $359,000 a year. (PSR ¶ 87). But that was not simply not the defendant's goal. The defendant's fraud scheme began just three months into his employment at Rakuten. It beggars belief that the defendant could have had any legitimate interest in working at Rakuten from the get-go. Tellingly, the fake identity he used to submit the false invoices was the very same fake identity he used as a reference in order to even obtain the job at Rakuten, suggesting that this was a con already in the making. The length of the fraud—a shocking four years lasting almost the entirety of the defendant's tenure at Rakuten—is also indicative of the defendant's mindset. This was no blip. He did not make a mistake once. Rather, he made the same calculated risk to embezzle from his employer month after month, year, after year. Finally, it bears repeating the loss amount of $6 million. There can be no question about the seriousness of the defendant's conduct, and the need for a sentence that is reflective of the nature of the crime.[1]

The defendant's history of deception must also be taken into consideration. The instant offense was the defendant's third arrest for similar conduct. At eighteen, the defendant was arrested for using another individual's ATM card on three separate occasions, causing a loss of a $560. (PSR ¶ 49). At twenty-eight, the defendant was arrested and convicted of attempted larceny in the third degree, when he stole $3,000 from the executor of an estate. The defendant was sentenced to 60 days 'imprisonment. (PSR ¶ 45). Rather than being deterred, the defendant evidently learned to become even more sophisticated in his scams. While these convictions are old, they do paint a rather alarming portrait of someone who has engaged in a lifetime of ever escalating criminal behavior.

Moreover, it appears from the defendant's statements to the Probation Office and in his own sentencing submission that the defendant's deception did not end in August 2019. The defendant stated that he left his previous job at Authentidate in 2013 because it was failing and that the company had since closed. (PSR ¶ 89). The defendant further stated that he lived off his savings before he was hired at Rakuten in 2015. (PSR ¶ 88). The defendant's wife added in her letter that their family generated a large amount of debt in that time period, (Def. Sent. Sub. at 8),

---

[1] That the defendant may have performed some of the services Interactive Systems billed is irrelevant to his culpability and the seriousness of his conduct. The defendant was an employee of Rakuten, it was his job to provide IT services to Rakuten. He was not permitted, however, to bill extra for performing his job through the use of a fictitious third-party vendor.

perhaps in an attempt to portray the defendant as acting out of necessity rather than greed. However, based on documents the Government obtained from Authentidate, the defendant's employment there terminated in November 2014. He signed a termination agreement with Authentidate, which provided the defendant with a one-time termination payment of over $40,000, just days before he was hired by Rakuten in May 2015. In addition, rather than closing its doors, as the defendant claimed, Authentidate continues to operate to this day, after changing its to Aeon Global Health in February 2018. These misrepresentations may seem immaterial, but they are demonstrative that the defendant may not have yet turned over a new leaf.

Thus, in order to deter the defendant, to protect the public, and to promote the respect for the law, a sentence within the Stipulated Guidelines is no greater than necessary.

### 3. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence below the Stipulated Guidelines Range of 51 to 63 months.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: /s/
Ni Qian
Andrew Rohrbach
Assistant United States Attorney
Tel: (212) 637-2364

cc: Counsel of Record (via ECF and Email)