M2MsKABc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                              20 CR 08 (RMB)

5   HICHAM KABBAJ,

6            Defendant.

7   ------------------------------x

                                        New York, N.Y.
8                                       February 22, 2022
9                                       9:30 a.m.

10
    Before:
11
                    HON. RICHARD M. BERMAN,
12
                                        District Judge
13

14                    APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  ANDREW ROHRBACH
17       Assistant United States Attorney

18  ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
         Attorney for Defendant
19  BY:  DAVID STERN

20

21

22

23

24

25

M2MsKABc

1      (The Court and all parties appearing telephonically)

2      THE COURT:  We should start by confirming that we're

3 proceeding by video conference instead of in person, and I just

4 want to make sure that defense counsel and Mr. Kabbaj have

5 discussed this and determined that it is appropriate to proceed

6 by video conference instead of in person in a courtroom in the

7 Southern District of New York.

8      Of course we're doing this because we're still feeling

9 the effects of the COVID pandemic, and in order to make sure

10 there are no further delays and the interest of justice and my

11 own judgment, we should appear in this fashion.

12      Is that agreeable, first of all, to defense counsel?

13      MR. STERN:  It is, and we discussed it and we think it

14 is in all of our best interest.

15      THE COURT:  Mr. Kabbaj, you discussed that with your

16 lawyer?

17      THE DEFENDANT:  I discussed that.  I agree also.

18      THE COURT:  OK.  How about the government?

19      MR. ROHRBACH:  Yes, your Honor, we agree.

20      THE COURT:  In sentencing, following the Supreme Court

21 decisions from 2006, '7 and subsequent, we know that the United

22 States Sentencing Guidelines are no longer mandatory.  Instead

23 of mandatory sentencing guidelines, the court looks at the

24 factors listed at 18, United States Code, Section 3553(a),

25 which I've done before coming out on the bench as it were

M2MsKABc

today.  Those factors include the nature and the circumstances

of the offense or crime, the history and characteristics of the

defendant, the need for the sentence to reflect the seriousness

of the offense, to promote respect for the law, to provide a

just punishment, to afford adequate deterrence to criminal

conduct, to protect the public from further crimes, to provide

the defendant with needed educational or vocational training or

medical care or other correctional treatment in the most

effective manner.

        In doing all that, we look at the kinds of sentences

that are available, we look at the kind of sentences and

sentencing range established under the sentencing guidelines,

even though, as I said before, those are no longer mandatory.

We look at any policy statements issued by the United States

Sentencing Commission that may apply.  We seek to avoid

unwarranted sentencing disparities among similarly situated

defendants, and in appropriate cases, to provide for

restitution.

        Mr. Kabbaj pled guilty before Magistrate Judge Aaron

on January 3, 2020, to wire fraud.  I accepted that guilty plea

on or about January 27, 2020.  We start always with a

guidelines analysis even though, as I said before, the

guidelines are not mandatory.

        Here, the offense level is 24, criminal history

category is I, and the sentencing guidelines range is 51 to

M2MsKABc

1    63 months of incarceration.

2            The presentence investigation reports the instant

3    offense as follows.  This is a quote from the presentence

4    report.  It goes as follows:  In the instant offense, from

5    at least August 2015 through May 2019, the defendant, while

6    employed as a senior manager in the information technology

7    department of Rakuten, R-a-k-u-t-e-n, an international Internet

8    company, defrauded his employer.  Specifically Mr. Kabbaj

9    submitted approximately 52 fraudulent invoices in the name of a

10   shell company he created, and that name is Interactive Systems

11   for fictitious IT products and services that were not provided,

12   resulting in payments amounting to approximately $6,051,453.43,

13   which were subsequently transferred to defendant's personal

14   accounts.  That's in the presentence report at page 21.

15           Defendant pled guilty pursuant to a plea agreement

16   which is dated December 12, 2019, in which there was what is

17   called a stipulated guideline range of 51 to 63 months of

18   incarceration, based on an offense level of 24 and a criminal

19   history category of I.  Mr. Kabbaj also agreed to forfeit

20   $6,051,453.43 in United States Currency and all right, title,

21   and interest in the following properties:  7229 Eden, E-d-e-n,

22   Ridgeway, Palm Beach Gardens, Florida, 33412; and 663 Lakeshore

23   Drive in Hewitt, H-e-w-i-t-t, New Jersey, 07421.

24           On January 12, 2022, I so ordered the parties'

25   stipulation and order of interlocutory sale of the Palm Beach

M2MsKABc

1   Gardens property.  Defendant further agreed to make restitution

2   in the amount of $6 million -- also the same number as the

3   number we mentioned before?

4           MR. ROHRBACH:  Yes, your Honor.

5           THE COURT:  $6,051,453.43.

6           Mr. Kabbaj is 50.  He will be 51 in April.  He is

7   married and has two children.  He has a bachelor's degree.  He

8   has one prior criminal conviction, namely attempted grand

9   larceny in the third degree.

10           According to the presentence report, Mr. Kabbaj stole

11   money from an executor of an estate which exceeded $3,000.  As

12   a result of this offense, he paid a fine, a $1,000 fine.  The

13   presentence investigation report also talks about another

14   criminal incident committed by Mr. Kabbaj.

15           According to the presentence report, the defendant at

16   an earlier age, namely 18 years of age, used another's ATM card

17   without permission for a total of $560.  Mr. Kabbaj was

18   required to pay restitution, court costs, victim witness fees,

19   and a fine.  However, he failed to pay, and the case went into

20   default status and remains open in that fashion.  According to

21   the presentence report, a warrant was issued for the defendant

22   in May of 2010.

23           Probation states that Mr. Kabbaj and his siblings

24   support his mother financially and with her daily needs, as she

25   suffers from several health issues, when Mr. Kabbaj's father

M2MsKABc

1  suffered a stroke in approximately 1997 and resided in an

2  assisted living facility until his death in 2015.  Mr. Kabbaj's

3  wife had undergone a double mastectomy in 2019.  According to

4  the defense, her cancer has spread to her lymph nodes and

5  throughout her body.

6         The presentence report also states that Mr. Kabbaj has

7  been unemployed since 2019.  He was employed by Rakuten

8  Marketing from 2015 to 2019, earning approximately $359,000 per

9  year.  Defendant's offense conduct occurred during the course

10 of his employment, as I mentioned before, with Rakuten.

11        Defendant was employed by a company called

12 Authentidate, A-u-t-h-e-n-t-i-d-a-t-e, from 2001 to 2013, as

13 a director of technical operations earning approximately

14 $165,000 per year.  Prior to that, he was employed as a systems

15 administrator earning approximately $80,000 per year.

16        Mr. Kabbaj has unemployed between 2013 and 2015, and

17 as noted, he has been unemployed since 2019, after he had been

18 terminated from his company for committing the offense

19 described herein against his employer.

20        Submission dated February 1, 2022, defense counsel

21 requests a sentence of home incarceration and a fine.  Among

22 other things, defense counsel asks the court to take into

23 consideration, among other things, the serious medical

24 condition of his wife, the defendant's obligation and

25 responsibility to take his wife to her medical appointments and

M2MsKABc

1   care for her, his two teenage children, one of whom is 16 and

2   the other is a freshman in college.  Also, the defense asks

3   that I take into consideration the COVID pandemic and

4   defendant's compliance with pretrial supervision for the past

5   two years.

6           Defense counsel argues that defendant committed the

7   offense due to the financial pressure of supporting his

8   immediate and extended family.  It appears to the court that

9   the defendant's offense conduct began shortly after he began

10  his employment at Rakuten.  Defense counsel has also submitted

11  letters of support from Mr. Kabbaj's family.  The letters

12  describe Mr. Kabbaj as a good generous person who has supported

13  his family financially and emotionally throughout his life, and

14  the letters describe how devoted he is to his family and how

15  the defendant became the father figure for his siblings when

16  his father suffered a stroke.

17          By letter dated February 8, 2022, the government

18  requests a sentence within the stipulated guideline range of

19  51 to 63 months of incarceration.  The government argues, among

20  other things -- and this is a quote from the government's

21  letter -- "The defendant's fraud scheme began just three months

22  into his employment at Rakuten.  It beggars, b-e-g-g-a-r-s,

23  belief that the defendant could have had any legitimate

24  interest in working at Rakuten from the get-go.  Tellingly, the

25  fake identity he used to submit the false invoices was the very

1    same fake identity used as a reference in order to even obtain

2    the job at Rakuten, suggesting that this was a con already in

3    the making.  The length of the fraud, a shocking four years,

4    lasting almost entirely of the -- consisting almost entirely of

5    the defendant's tenure at Rakuten is also indicative of

6    defendant's mindset.  This was no blip.  He did not make a

7    mistake once.  Rather, he made the same calculated risk to

8    embezzle from his employer month after month, year after year.

9    Finally, it bears repeating that the loss amount is $6 million

10   approximately.  There can be no question about the seriousness

11   of the defendant's conduct and the need for a sentence that is

12   reflective of the nature of the crime."  That's from the

13   government's letter at page three.

14          The government also argues that the defendant

15   continues to attempt to deceive.  Government states, "Based

16   on documents the government obtained from Authentidate,

17   A-u-t-h-e-n-t-i-d-a-t-e, the defendant's employment there

18   terminated in November of 2014.  He signed a termination

19   agreement with Authentidate which provided the defendant with a

20   one-time termination payment of over $40,000 just days before

21   he was hired by Rakuten in May of 2015.  In addition, rather

22   than closing its doors, as the defendant had claimed,

23   Authentidate continues to operate to this day after changing

24   its name to Aeon, A-e-o-n, Global Health in February 2018.

25   These misrepresentations may seem immaterial, but they are

M2MsKABc

1    demonstrative of the fact that the defendant may not have yet

2    turned over a new leaf."

3          I have also reviewed the presentence investigation

4    report prepared on February 28, 2020, together with the

5    addendum dated March 26, 2020, and the sentencing

6    recommendation approved on March 26, 2020.  They also had

7    received correspondence from defense counsel dated February 1,

8    2022, and from the government dated February 8, 2022.

9          My first question for defense counsel and for

10   Mr. Kabbaj is this:  Have you had an opportunity to read and

11   discuss with each other the presentence investigation report,

12   the addendum, and the sentencing recommendation?

13         Counsel first.

14         MR. STERN:  Yes.  We have read together and discussed

15   all of the documents you just discussed in your remarks.

16         THE COURT:  Mr. Kabbaj, is that correct, you went over

17   the presentence report and these other documents with your

18   attorney?

19         THE DEFENDANT:  That's correct, with the exception of

20   the letter from the prosecution you just mentioned.

21         THE COURT:  Which one was that?  Was it the

22   February 8, 2022, letter?

23         THE DEFENDANT:  The one that you stated that

24   Authentidate continued business under another name.

25         MR. ROHRBACH:  That is the government's letter, not

M2MsKABc

1    the probation's report.

2              THE COURT:  I'm sorry.

3              MR. ROHRBACH:  That's the government's letter.

4              THE COURT:  And the date of that letter again?

5              MR. ROHRBACH:  That was February 8, 2022.

6              THE COURT:  Great.

7              Do either of you, you being defense counsel and

8    Mr. Kabbaj, have any remaining objections to the contents of

9    the presentence report, apart from what had previously you may

10   have brought to the attention of probation?

11             MR. STERN:  Nothing that wasn't addressed in our

12   submission.

13             THE COURT:  Mr. Kabbaj, any further objections?

14             THE DEFENDANT:  No, sir.

15             THE COURT:  Then I will return the presentence report

16   to the probation department, which is our practice.  I'm happy

17   at this time to hear from defense counsel, from Mr. Kabbaj, and

18   from government counsel.

19             MR. STERN:  Judge, while I stand by all that we wrote,

20   I'm not going to rematch it all.  You obviously have read it

21   very carefully.  No point in my repeating what you already

22   read.  But what I do want to talk to you about is a decision

23   Mr. Kabbaj and I have made together to ask for a sentence other

24   than the one we asked for in our letter.

25             As you noted, we asked for the sentence because of the

M2MsKABc

1   necessity of him caring for his wife, who I think is slowly

2   dying.  We would ask you to craft a sentence, sentence him to

3   home confinement and four years of weekends in jail.  I know

4   that is an unusual sentence in light of what the guidelines

5   are.  I think there is good reasons for it, but I want to talk

6   to you briefly about what it means to do weekends in jail.

7        I know you know generally what that means.  I have had

8   clients do it before, and it is not an easy sentence.  Every

9   week you have to say good-bye to your family again.  Every week

10  you have to have the jarring experience of going from what I'll

11  term regular life into a life in jail.  And once you're there,

12  there is tremendous pressure on you from other inmates to

13  engage in criminal acts.  So people say to you, you should

14  bring drugs in, you should bring a SIM card, you should do all

15  these kinds of things.  It takes real fortitude to resist that.

16       I say all of those things because I don't want it to

17  appear that the sentence we're asking for is some kind of walk

18  in the park.  It is really not.  It's a serious sentence and

19  one that I think is just, reflects the seriousness of the case,

20  and takes into account all of the other issues that Mr. Kabbaj

21  has to deal with, particularly his children and his wife.

22       I think it is fair to say that he has been shaken by

23  this whole experience.  I don't mean by that to disagree with

24  anything you or the government have said.  He committed a

25  serious crime.  He knows he committed a serious crime.  He just

M2MsKABc

| | |
|---|---|
| 1 | straight up stole money from his employer, and there is no good |
| 2 | excuse for that.  But I think the kind of sentence we're |
| 3 | seeking will do what is best for society, allow his wife to be |
| 4 | taken care of, and his children to be taken care of, and will |
| 5 | still punish him in a very serious way. |
| 6 | Other than that, I have nothing to add to what we have |
| 7 | written before, and I thank you for listening to me. |
| 8 | THE COURT:  Mr. Kabbaj. |
| 9 | THE DEFENDANT:  Yes, sir. |
| 10 | THE COURT:  If you wish to be heard. |
| 11 | THE DEFENDANT:  Is it OK if I read a statement I have? |
| 12 | THE COURT:  Sure. |
| 13 | THE DEFENDANT:  I don't have it memorized. |
| 14 | I have always tried to be a good family member, son, |
| 15 | brother, father, husband.  My entire life, I had to help out |
| 16 | with my family expenses starting from my first job at 13 years |
| 17 | old in a deli.  After my father's stroke, the financial |
| 18 | responsibility from my mom and helping my younger sister fell |
| 19 | upon me.  Not just that, but also helping my uncle in Canada |
| 20 | with rent and my uncle in Morocco with monthly food expenses. |
| 21 | My grandmother made we promise to always help them after I got |
| 22 | married. |
| 23 | (Reporter interruption) |
| 24 | THE COURT:  The court reporter wants to make sure that |
| 25 | she hears what you say so she can record it. |

M2MsKABc

1          THE DEFENDANT:  My grandmother made me promise to

2    always help them and be there for them the last time I was with

3    her.  After I got married in 2001, my wife moved to the United

4    States, and it was my responsibility to provide her family with

5    financial assistance, whether it was helping my mom with

6    household chores or working for extra money, as I grew up

7    helping my family members with whatever they needed, my entire

8    life was always helping others.

9          Through some stupid and arrogant actions, I got myself

10   into a situation after my father died where I thought I found

11   an easy way to take money from my employer.  I'm not excusing

12   what I did, just stating factually that I did something

13   extremely stupid that has ruined my career in a field that I

14   learned the ground up, and I will probably never work in again.

15         I have learned that my actions devastated employees

16   that reported to me.  I apologize to them and the entire

17   Rakuten organization.  I have devastated my mother, sisters,

18   nieces, and brother-in-law and all extended family.  I have

19   devastated my wife, daughter, and son.  I know that nothing

20   like this will ever happen again, and I know that I will spend

21   every waking minute of my life thinking about what I did and

22   everyone I've hurt with my actions.

23         My son was diagnosed with an arachnoid cyst in his

24   skull when he was three years old.  This is a cyst filled with

25   spinal fluid that does not pop when the skull is performing.

M2MsKABc

My son is now 16 years old, and arachnoid causes massive
migraine headaches, personality changes.  As the brain grows,
the cyst is pushing against the brain, causing other issues.

In July 2019, my wife underwent a double mastectomy
with lymph node removal.  After the mastectomy, she was
supposed to undergo chemotherapy and radiation.  I lost my job
due to my actions and we lost our insurance.  My wife's
chemotherapy and radiation were postponed until April 2020,
during the beginning of the COVID pandemic.  My actions
resulted in her not being able to receive the care she needed
in the time she needed it.  Since then, the cancer has spread
and has metastasized.  She has undergone and continues to
undergo treatments that are recommended, but the doctors have
not been able to give hope that these treatments will really
help.

Hopefully, with the pandemic winding down, hospitals
and treatment centers can focus 100 percent back on their
patients.  Our days are either spent at doctor appointments or
helping her around the house, driving my son to school and
after-school activities.  My daughter is a freshman at SUNY
Binghamton.

I had a bad case of COVID, and that has resulted in
what I call brain fog.  I used to be able --

THE COURT:  What you call what?

THE DEFENDANT:  Brain fog.  I used to be able to keep

M2MsKABc

1    track of over 100 employees and dozens of projects, and now, at

2    times, I can't remember where the cups are, and 45 minutes

3    later I do remember.  I also used to be in OK shape for a

4    50-year-old male, and now a flight of stairs has me winded.

5    Since I do not have insurance, it has been very difficult for

6    me to get the medical help I need.

7            What I have done has punished my family greatly.  I

8    haven't gone over how much my mother has aged these last two

9    years.  My niece is not sleeping, and my daughter has panic

10   attacks.  Whatever sentence I receive, I deserve it.  Me, I

11   deserve it.  My family, they need me now more than ever.  It is

12   a catch-22.  I did something, but I deserve to be punished for,

13   that has made me even more indispensable to my family.

14           I apologize to this court, I apologize to Rakuten, I

15   apologize to my family, and I can only ask that you take my

16   family into consideration.  I'm sorry, your Honor.

17           Thank you.

18           THE COURT:  Government counsel, did you wish to add

19   anything?

20           MR. ROHRBACH:  Thank you.

21           Your Honor, like Mr. Stern, I know that the court has

22   reviewed the submissions very carefully.  I won't repeat

23   arguments about the seriousness of the offense here.  I do want

24   to make one small correction and then one point.

25           The small correction is, as the court read it, the

M2MsKABc

1   government's understanding is that Mr. Kabbaj's settlement with

2   Authentidate was closer to $35,000.  The court read our

3   submission said it was over $40,000.

4            The point that I would like to make is really

5   something that has been conveyed to the government from

6   Rakuten, and it's the government's effort to make sure that the

7   victim is reasonably heard in these proceedings.

8            Rakuten informed the government that in addition to

9   the financial cost, there was a significant human cost to the

10  defendant's conduct.  Rakuten is a vivid corporation, but

11  Mr. Kabbaj worked with colleagues, he had supervisors, he

12  himself supervised other employees who were his direct reports.

13  The people he worked with trusted him and the people who

14  reported to him looked up to him.  The crime that the defendant

15  committed was a real betrayal of that trust, and the victim

16  here asked me to convey to the court and make sure that the

17  court considered that that betrayal had a human impact on many

18  employees who worked there and has taken people who worked

19  there time and effort to rebuild their trust in each other and

20  to resume their ability to work together as a team.  That human

21  impact should be considered at the sentencing as well as the

22  remaining facts in the government's submission.

23            THE COURT:  Thank you.

24            I'm going to adopt the findings of fact in the

25  presentence investigation report, unless defense counsel has

M2MsKABc

1    any further objections?

2              MR. STERN:  We do not.

3              THE COURT:  Mr. Kabbaj, any further objections from

4    you?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  How about the government?

7              MR. ROHRBACH:  No, your Honor.

8              THE COURT:  I will stand corrected.  The number is

9    about 35,000, as opposed to $40,000, as you pointed out.

10             I'm going to preview the sentence briefly and then

11   impose it.  First of all, I have to say that I consider this to

12   be a very serious crime.  Certainly, approaching $6 million in

13   value, so to speak, which is serious enough.  But it seems, as

14   I said before, and no one seems to have challenged that, that

15   the fraud began almost immediately upon new employment, and new

16   employment that I don't know if that was his initial

17   compensation.  But as you know, I mentioned the amount of

18   $349,000 a year that he was earning lawfully.  That's a pretty

19   staggering amount.  Pretty significant amount by any means,

20   certainly in comparison to almost every defendant that comes

21   before me and the federal courts in these kinds of cases.

22             THE DEFENDANT:  Your Honor, can I say something?

23             THE COURT:  Yes.

24             THE DEFENDANT:  I apologize.  I started there at

25   150,000, and I started there after my father passed away in

M2MsKABc

1    July.  Just so you know, since no one asked.  It started in

2    August.

3              THE COURT:  OK.

4              THE DEFENDANT:  I apologize.

5              THE COURT:  Yes.  Did you earn $349,000 ever at

6    Rakuten?

7              THE DEFENDANT:  That was at the end.  I was promoted

8    four or five times during the three and a half years I was

9    there.

10             THE COURT:  That kind of is my point.

11             THE DEFENDANT:  I apologize.

12             THE COURT:  So it was a very sophisticated and

13   lucrative, remunerative position at a very substantial company,

14   which in the midst of the fraud, finds you being promoted up to

15   $349,000.  Again, first of all, this just makes it very serious

16   to me and juxtaposed among all the other defendants that come

17   before this court, that if they had that kind of opportunity, I

18   doubt that many or most or nearly all of them, but this is

19   speculation, would ever be engaged in crime, criminal conduct.

20   Meaning many of those people, I'm not trying to excuse them,

21   all these disparate crimes that I'm thinking of, but at least

22   one understands the rationale for the criminal conduct.

23             Here, it escapes me.  I mean, sure, you know, there

24   are family issues and family responsibilities and family

25   illnesses, all of that, but they don't begin to impact or

M2MsKABc

1    justify, certainly.  They don't, couldn't passively justify

2    this fairly breathtaking theft of Rakuten's resources.  I still

3    don't understand it, frankly, having heard both Mr. Kabbaj and

4    defense counsel and the government.

5         So, for that reason, because I do think it is so

6    serious and because I don't want there to be any disparities or

7    unwarranted disparities among other defendants either in like

8    crimes or others, and I think that the just punishment -- and

9    I'll go into these reasons a little bit more as we go along --

10   I'm going to impose a guideline sentence of 52 months of

11   incarceration.  The offense level is 24 and the criminal

12   history category is I and the guideline range is 51 to

13   63 months.

14        That term of incarceration will be followed by three

15   years of supervised release with these conditions attached:

16        One, that the defendant not commit another federal,

17   state, or local crime;

18        Two, that the defendant shall not illegally possess a

19   controlled substance;

20        Three, that the defendant shall refrain from any

21   unlawful use of a controlled substance.  He'll be required to

22   submit to one drug test within 15 days of placement on

23   supervision, and at least two unscheduled drug tests

24   thereafter, as may be directed by the probation officer.

25        In addition, Mr. Kabbaj shall comply with what are

M2MsKABc

1    called the standard conditions.  These are numbered 1 through

2    12 and found at pages 23 and 24 of the presentence report.

3    They include, among other things, that he must not on his own

4    possess or have access to a firearm, ammunition, destructive

5    device or dangerous weapon, anything that was designed or was

6    modified for the specific purpose of causing bodily injury or

7    death to another person.

8           Plus, the following special conditions, which I'll

9    enumerate in a moment and which incidentally the court finds

10   are reasonably related to the factors set forth in Section

11   3553(a)(1), (A)(2)(b), (a)(2)(C), and (a)(2)(D), and which I

12   also find involve no greater deprivation of liberty and is

13   reasonably necessary for the purposes set forth in sections

14   3553(a)(2)(B), (a)(2)(C), and (a)(2)(D), and are consistent

15   also with pertinent policy statements issued by the United

16   States Sentencing Commission pursuant to 28, United States

17   Code, Section 994(a).

18          Mr. Kabbaj shall be supervised in his district of

19   residence.  He is required to report to the probation

20   department within 48 hours of release from custody.  Throughout

21   the term of his supervision, he is required to participate in

22   weekly therapeutic counseling by a licensed therapist.  He may

23   be required to contribute to the cost of services rendered as

24   by a copayment with an amount to be determined by the probation

25   officer based on such factors as ability to pay or availability

M2MsKABc

1    of third-party payment.

2            In addition, he is required to provide the probation

3    department and the probation officer with access to any

4    requested financial information in order to ensure compliance

5    with the financial penalties imposed here.

6            He is forbidden, that is to say, he must not incur

7    new credit card changes, new credit charges rather, or open any

8    additional lines of credit without approval of the probation

9    officer.  In such a case, he must also be in compliance with

10   the installment payment schedule.

11           I intend not to impose a fine.  None is recommended by

12   the probation department.  Restitution is imposed in the amount

13   of $6,051,453.43, payable to the Southern District of New York

14   Clerk of Court at 500 Pearl Street, New York, New York  10007.

15   The Clerk of Court will forward any restitution payments to

16   Rakuten.

17           If I could ask the government counsel, if you have it

18   now or if you would, submit the address for these payments to

19   Rakuten.

20           MR. ROHRBACH:  I'll be willing to submit that

21   information, your Honor.

22           THE COURT:  Thank you.

23           During the term of incarceration, this is how the

24   restitution shall be paid.  If Mr. Kabbaj is engaged in a BOP

25   non-UNICOR work program, he is required to pay $25 per quarter

M2MsKABc

toward the criminal financial penalties.  However, if he is

participating in the BOP's UNICOR program as a grade one

through four, he is required to pay 50 percent of his monthly

UNICOR earnings toward the criminal financial penalties,

consistent with BOP regulations at 28 CFR Section 545.11.

          If any portion of the financial penalties remains

unpaid at the time of defendant's release from incarceration,

the remainder shall be paid during the term of supervised

release in equal monthly installments.

          I have considered the factors set forth at 18, United

States Code, Section 3663(a)(1)(B)(i), or 18, United States

Code, Section 3664, in imposing this restitution requirement

and the schedule.  Among other things, I have considered the

amount of the loss sustained by the Rakuten company as a result

of the offense, the financial resources of the defendant, the

financial needs and earning ability of the defendant and the

defendant's dependents, and such other factors as the court

deems appropriate.

          I also intend to impose a $100 special assessment,

which is mandatory pursuant to 18, United States Code,

Section 3013.

          Briefly, the reasons for the sentence to be imposed

are these.  The offense level is 24, the criminal history

category is I, the sentencing guideline range is 51 to

63 months.  And I believe that this sentence is appropriate

M2MsKABc

1      given, among other things, the seriousness of the offense and

2      the need for punishment certainly.

3              In terms of deterrence, I think it would have a

4      deterrent effect certainly upon Mr. Kabbaj, although I don't

5      know if that is necessary, and it may also have a general

6      deterrent effect.

7              But mostly, I have considered the nature and the

8      circumstances of this very serious offense, as well as

9      Mr. Kabbaj's history and characteristics.  I intend to impose

10     this sentence in order to reflect the seriousness of the

11     offense, to promote respect for the law, to provide a just

12     punishment, to hopefully afford deterrence to criminal conduct,

13     certainly to protect the public from further crimes of the

14     defendant, and to provide needed educational or vocational

15     training, medical care, or other correctional treatment in the

16     most effective manner.

17             Here, I am principally referring to the need for

18     mental health treatment.  I think that would be very beneficial

19     and, perhaps, would shed some light on why this serious

20     offense, in fact, has been committed.

21             If defense counsel wishes to add anything, this is a

22     good time.  I'll ask the same of Mr. Kabbaj and the same of the

23     government before I actually impose the sentence, starting with

24     Mr. Rothman.

25             MR. STERN:  It probably says Rothman.  I'm using my

M2MsKABc

1    partner's desk.  I couldn't do it on my computer for some

2    reason.

3              THE COURT:  Thank you.

4              MR. STERN:  I have three things, not really editions,

5    but I pose requests.  I assume I'll be corrected if I'm wrong

6    that the sale of the Florida property will be credited towards

7    his restitution requirement, because I think that that was one

8    of the ways in which the money was spent.

9              Mr. Rohrbach, am I right or wrong about that?

10             MR. ROHRBACH:  So the sale of Mr. Kabbaj's Florida

11   property will be credited against his forfeiture amount, and

12   then whether the forfeiture money is used to credit against his

13   restitution amount is something that will be decided by the

14   Justice Department in Washington, DC, to which I have no

15   visibility.

16             THE COURT:  I think the answer, Mr. Stern, is that it

17   is not a sure thing what you're saying, and it is not something

18   that I can direct the process.  And the agreement which I've so

19   ordered is a forfeiture agreement, and it is true that the

20   proceeds from that sale are credited to forfeiture.

21             MR. STERN:  OK.  Secondly, I'm asking your Honor to

22   let Mr. Kabbaj self-surrender, that is, to be notified of the

23   facility he is supposed to go to and go himself.

24             Finally, I would ask that he be sent to a facility

25   close to his home.  I think, although I could be wrong, the two

M2MsKABc

1   closest are Fort Dix and Otisville, and he be sent to either of

2   those.  That would be some way of having some mercy on his

3   family.

4           THE COURT:  I will grant both of those two requests,

5   mainly self-surrender, and I'll give you a date in a moment.

6           I'll recommend that it be near where, I guess, his

7   residence is.  Counsel is saying that Fort Dix and/or Otisville

8   appear to meet that requirement.

9           Mr. Kabbaj?

10          THE DEFENDANT:  I have nothing to say, your Honor.

11          THE COURT:  Anything further from the government?

12          MR. ROHRBACH:  I may have misheard it, your Honor, or

13  not heard your Honor mention forfeiture.  I just wanted, just

14  so the record is clear, that the court's prior forfeiture

15  orders are part of the court's sentence as well?

16          THE COURT:  Yes.  I thought I had mentioned it, but if

17  I didn't...

18          MR. ROHRBACH:  I may just not have heard it, your

19  Honor.

20          THE COURT:  You're absolutely right.  I think I

21  mentioned also, but I had so ordered that order of forfeiture.

22  It is part of this sentencing for certain.

23          MR. ROHRBACH:  Thank you.

24          THE COURT:  Here is the sentence I will impose.  The

25  guideline range is 51 to 63 months.  Having considered the

M2MsKABc

1   Sentencing Reform Act of 1984, the sentencing guidelines, and

2   the factors at 18, United States Code, Section 3553(a), it is

3   my judgment that the defendant, Hicham, H-i-c-h-a-m, Kabbaj, is

4   hereby committed to the custody of the Bureau of Prisons to be

5   imprisoned for a term of 52 months of incarceration.  I will

6   set a surrender date.

7          Christine, could you suggest a date right now,

8   actually?

9          THE DEPUTY CLERK:  Yes, Judge.  How is April 26,

10  before 2:00 p.m., at the institution?

11         THE COURT:  That's fine.

12         April 26 by 2:00 p.m. at the institution designated by

13  the Bureau of Prisons.  The court will recommend that he be

14  housed at Fort Dix or Otisville so that he can be close to his

15  family.

16         You know, counsel, I know you do, that that is a

17  recommendation which I'm happy to make.  It is up to, though,

18  the Bureau of Prisons as to where they will designate

19  Mr. Kabbaj.

20         MR. STERN:  I do know it is not binding on the Bureau

21  of Prisons.

22         THE COURT:  OK.  Followed by the term of incarceration

23  of 52 months is followed by supervised release for three years

24  subject to the mandatory, the standard, and the special

25  conditions that I outlined before, and I incorporate that

M2MsKABc

1    discussion here by reference with respect to those conditions

2    which attach to supervised release.

3            I did not impose a fine.  I am imposing restitution

4    in the amount of $6,051,453.43, payable to the Southern

5    District of New York clerk, and that information, including the

6    payment schedule which I mentioned before, is incorporated here

7    by reference.  I'm also including forfeiture which is the

8    subject of an order, written order in this matter, as part of

9    this sentence.

10           I'm also imposing a $100 special assessment, which is

11   due immediately.  And as to the reasons for the sentence, I

12   have sentenced within the guideline range, and I believe this

13   sentence is appropriate for all of those reasons that I

14   mentioned before, and I incorporate that discussion here by

15   reference.

16           Does either counsel know of any legal reason why this

17   sentence should not be imposed as so stated starting with

18   defense counsel?

19           MR. STERN:  I know of no such reason.

20           THE COURT:  How about the government?

21           MR. ROHRBACH:  No, your Honor.

22           THE COURT:  I hereby order the sentence to be imposed

23   as so stated.

24           Mr. Kabbaj, to the extent that you have not already

25   waived your appeal rights, now I'm talking of course about the

M2MsKABc

1      plea agreement dated December 12, 2019, which by the way

2      includes waivers of several appeal rights, that plea agreement

3      says that you agreed not to file a direct appeal.  You also

4      agreed not to bring a collateral challenge, including but not

5      limited to any application under 28, United States Code,

6      Sections 2255 or 2241, of any sentence that's within or below

7      the stipulated guideline range of 51 to 63 months of

8      imprisonment.  Of course this sentence is within that

9      stipulated guideline range, and so those waivers of the right

10     to appeal or challenge apply here.

11            But to the extent that there are any other rights that

12     I'm not aware of, I'll notify you that you would have the right

13     to appeal based on those rights.  If you are unable to pay the

14     cost of an appeal, you would have the right to apply for leave

15     to appeal in forma pauperis.  If you request, the Clerk of

16     Court would prepare and file a notice of appeal on your behalf

17     immediately.

18            Mr. Kabbaj, do you understand the waivers of your

19     right to appeal that I have mentioned to you and that are set

20     forth in the plea agreement?

21            THE DEFENDANT:  I understand.

22            THE COURT:  Are there any open counts the government

23     wished to resolve at this time?

24            MR. ROHRBACH:  Yes, there are, your Honor, and the

25     government moves to dismiss all open counts.

M2MsKABc

1          THE COURT:  I'll grant that application.

2          And then starting with defense counsel, did you wish

3    to add anything to today's sentencing proceeding?

4          MR. STERN:  The only thing I wish to add, your Honor,

5    I'm not seeking a ruling from you, is that if Mr. Kabbaj's wife

6    is having a crisis as the time of his sentence approaches, I

7    may write you a letter seeking an extension to his time to

8    surrender.  I don't mean to suggest that will happen.  I hope

9    it doesn't happen, but should it happen, I'll write you a

10   letter close to that time.

11         THE COURT:  OK.  Let's see.  I think that's it for

12   today.

13         I wish you, Mr. Kabbaj, the best of luck going

14   forward.

15         Thanks, folks.  We're adjourned for today.

16         MR. STERN:  Thank you, your Honor.

17         MR. ROHRBACH:  Thank you, your Honor.

18                          *   *   *

19

20

21

22

23

24

25